FILED
CLERK
10/18/2016 1:38 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
POWER UP LENDING GROUP, LTD,

                Plaintiff,

  -against-

ALAN MURPHY and GRANT SEABOLT, JR.,

                Defendants.
--------------------------------------------------------------------------------x

**Memorandum of Decision & Order**
16-cv-1454 (ADS)(AYS)

APPEARANCES:

**Naidich Wurman LLP**
*Attorneys for the Plaintiff*
111 Great Neck Road
Great Neck, NY 11021
       By:    Richard S. Naidich, Esq. Of Counsel

**Alan Murphy**
*Pro Se Defendant*
7433 Billo Drive
San Angelo, TX 76901

**D. Grant Seabolt, Jr.**
*Pro Se Defendant*
5307 E. Mockingbird Lane, 5th Floor
Dallas, TX 75206

SPATT, District Judge:

     This opinion considers the enforceability of a forum selection clause against individual officers and directors, who entered into a contract on behalf of their corporate employer.

     On March 24, 2016, the Plaintiff Power Up Lending Group, Ltd. (the "Plaintiff") commenced this action against the Defendants Alan Murphy ("Murphy") and D. Grant Seabolt, Jr. ("Seabolt," together with Murphy, the "Defendants"), seeking to recover amounts allegedly due under a financing agreement between the Plaintiff and STW Resources Holding Corp. ("STW"), a corporation apparently controlled by the Defendants.

1

Presently before the Court are *pro se* motions by the individual Defendants seeking to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(2).

For the reasons that follow, the motions to dismiss are denied, and this case is referred to the assigned Magistrate Judge for discovery.

I.  BACKGROUND

A.  **The Facts as Alleged in the Complaint**

Unless otherwise noted, the following salient facts are drawn from the complaint and are construed in favor of the Plaintiff.

At all relevant times, Murphy and Seabolt were, respectively, the Chief Executive Officer and General Counsel of STW, a Nevada corporation with a principal place of business in Midland, Texas.

On February 8, 2016, the Plaintiff, a Virginia corporation, entered into a contract with STW. The contract, styled a Revenue Based Factoring Agreement (the "Financing Agreement"), provided that the Plaintiff would provide STW with the sum of $150,000. In exchange for this capital advance, STW would repay the Plaintiff a total of $202,500 over time in 168 daily installments of $1,205.36.

The Plaintiff alleges that, prior to entering into the Financing Agreement, it demanded to inspect various documents regarding STW's financial condition (the "Financials"). According to the complaint, these documents indicated that STW had the financial capacity to fully satisfy its obligations under the Financing Agreement. The Plaintiff implies that it relied upon the Financials in entering into the contract.

Nevertheless, to guarantee repayment of the loan, Murphy, on behalf of STW, allegedly executed a second document, styled a Security Agreement and Guaranty (the "Security Agreement"),

and a confession of judgment in favor of the Plaintiff in the amount of $202,500. The Plaintiff claims to have filed notice of its security interest with the Secretary of State for Nevada.

According to the Plaintiff, after making only 14 of the required installment payments, STW defaulted on its obligations under the Financing Agreement.

The complaint appears to allege that this default was premeditated and that STW never intended to fully comply with its obligations under the agreement. *See, e.g.*, Compl. ¶ 26 (alleging that the cessation of installment payments so soon after receiving the $150,000 loan "indicates a preconceived fraudulent intention on the part of the [Defendants] to prevent [the Plaintiff] from recovery under the [Financing Agreement] and companion transactional documents").

In this regard, the complaint alleges that the Financials provided by STW to induce the Plaintiff to enter into the Financing Agreement were false; that the individual Defendants knew them to be false at the time they were provided; and that the fabricated Financials were meant to induce the Plaintiff to enter into the Financing Agreement under false pretenses.

Based on these facts, the Plaintiff alleges causes of action based on fraudulent inducement and intentional interference with a contract.

B.      Additional Jurisdictional Facts

In support of their motions to dismiss, the individual Defendants submitted sworn declarations of fact. The Court will now summarize these submissions, which are properly considered on a motion to dismiss under FED. R. CIV. P. 12(b)(2). *See AEP-PRI Inc. v. Galtronics Corp.*, No. 12-cv-8981, 2013 U.S. Dist. LEXIS 114681, at *7-*8 (S.D.N.Y. Aug. 13, 2013) ("In considering a motion under Rule 12(b)(2), the Court may consider extrinsic evidence such as affidavits and other supporting materials"), *aff'd*, 2014 U.S. App. LEXIS 16391 (2d Cir. Aug. 25, 2014).

1. **The Facts Relating to the Individual Defendant Alan Murphy**

In his affidavit, Murphy states that he has been a resident of San Angelo, Texas since 1956. *See* Murphy Aff. ¶ 1. In this regard, he states that, in his individual capacity, he has never regularly been engaged in any business in the State of New York; nor has he contracted to supply goods or services in New York or to any New York resident. *See id.* ¶ 2. He denies ever appointing a registered agent for service in New York; obtaining a certificate to do business in New York; maintaining any offices in New York; or owning or leasing any real or personal property in New York. *See id.* ¶¶ 3-4. Also, he has never engaged in advertising for any purpose in New York. *See id.* ¶ 7.

Murphy states that, in his individual capacity, he has never owed a New York address, telephone number, or bank account. *See id.* ¶¶ 5-6. In fact, Murphy states that, in his lifetime, he has never traveled to New York for a personal reason. *See id.* ¶ 16. On one occasion in November 2015, in his capacity as corporate officer for STW, Murphy traveled to New York City for a meeting with potential investors. *See id.* However, these potential investors did not include any representative of the Plaintiff and the meeting apparently did not concern the agreements at issue in this case. *See id.*

Also, on another occasion in 2010, in his capacity as an officer of a separate Texas-based company, Murphy traveled to Port Washington for a business meeting. *See id.*

With respect to his business dealings, since at least January 1, 2016, Murphy has been the President; Chief Executive Officer; Chairman; and a director of STW. *See id.* ¶ 9. In that capacity, on February 9, 2016, in Midland, Texas, Murphy executed the Financing Agreement, a copy of which he attached for the Court's review. *See id.* ¶ 10 & Ex. A-1. Murphy emphasizes that he did not sign the Financing Agreement in his individual capacity. *See id.*

On February 9, 2016, Murphy, in his capacity as President and CEO of STW, also executed the confession of judgment referenced above, a copy of which is also attached to his affidavit. *See id.* ¶ 11 & Ex. A-2. In relevant part, the confession of judgment, which bears the attestation of a Texas

4

notary public, authorized the Plaintiff to enter a judgment against STW in the event that STW defaulted on its obligations under the Financing Agreement. *See id.*

Murphy states that any and all communications he had with the Plaintiff or its representatives in connection with these agreements took place with him physically present in the State of Texas. *See id.* ¶ 13. He further states that his execution of these agreements constituted a merely ministerial function performed as in his capacity as a corporate officer for STW. *See id.* ¶ 14.

2. **The Facts Relating to the Individual Defendant D. Grant Seabolt, Jr.**

In his affidavit, Seabolt states that he was born in New Orleans, Louisiana and has been a resident of DeSoto, Texas since at least 1987. *See* Seabolt Aff. ¶ 1. Seabolt is an attorney licensed to practice in the States of Texas and Alabama. *See id.* ¶ 17. He has never resided, nor has been licensed to practice law in the State of New York. *See id.* ¶¶ 1, 17.

Similar to Murphy, Seabolt states that, in his individual capacity, he has never regularly engaged in any business in the State of New York; nor has he contracted to supply goods or services in New York or to any New York resident. *See id.* ¶ 2. He also denies ever appointing a registered agent for service in New York; obtaining a certificate to do business in New York; maintaining any offices in New York; or owning or leasing any real or personal property in New York. *See id.* ¶¶ 3-4. He has never engaged in advertising for any purpose in New York. *See id.* ¶ 7. Seabolt, in his individual capacity, has never owed a New York address, telephone number, or bank account. *See id.* ¶¶ 5-6.

Since at least January 1, 2016, Seabolt has been the General Counsel; Corporate Secretary; and a director of STW. *See id.* ¶ 9. In that capacity, on February 9, 2016, he reviewed and edited a draft of the Financing Agreement. *See id.* ¶ 10. According to Seabolt, the edits he provided were designed to ensure that, in all places Murphy was being asked to sign, the agreement clearly

5

indicated that Murphy was signing in his representative capacity as an officer of STW, and not in his individual capacity. *See id.*

Similarly, Seabolt states that he reviewed and edited a draft of the confession of judgment. *See id.* ¶ 11. Again, he claims that the edits he supplied were designed to ensure that any potential judgment would be against the corporate entity, namely, STW, and not the individual Defendants. *See id.*

Seabolt states that, prior to the execution of the Financing Agreement, he had no communications with the Plaintiff or its representatives. *See id.* ¶ 13. He also states that any relevant telephonic or e-mail communications he eventually did have took place no earlier than March 15, 2016; were conducted solely in his capacity as a corporate officer for STW; and took place with him physically present in the state of Texas. *See id.*

In his affidavit, Seabolt describes the times in his life that he has traveled to New York for personal or professional purposes. For example, he states that, in 1980, as a Marine, he spent a liberty in New York City. *See id.* ¶ 16. He also attended a fellow Marine's wedding in Hyde Park on an unspecified date. *See id.*

Between August 2011 and May 2014, Seabolt claims to have visited Brooklyn several times a year to visit his daughter, who was studying at the Pratt Institute. *See id.*

In his professional capacity, in 2010, Seabolt, acting on behalf of STW, traveled to New York for meetings with potential investors and environmental regulatory agencies. *See id.* ¶ 17. In 2013, again on behalf of STW, he was admitted *pro hac vice* to appear in the New York County Supreme Court to defend the corporation against a civil lawsuit. *See id.* Seabolt states that he has made approximately five trips to New York for various court appearances and depositions in connection with that litigation. *See id.* Of note, Seabolt states that he has never met with representatives of the Plaintiff during any of these business trips. *See id.*

II.     Relevant Procedural History

On March 10, 2016, following STW's default under the Financing Agreement, the Plaintiff filed the confession of judgment in the Nassau County Supreme Court in the total amount of $193,349.96. *See* Compl. ¶ 21. However, without supporting details, the complaint alleges only that this judgment is "uncollectable and valueless as against STW, such that at this juncture, the entire investment of $150,000 cannot be recovered." *Id.* ¶ 22.

On May 20, 2016, relying upon the facts set forth in their respective affidavits, Murphy and Seabolt filed nearly identical pre-answer motions seeking to dismiss the complaint on the ground that the Court lacks personal jurisdiction over them. In particular, the Defendants argued that they lacked sufficient meaningful contacts with this state to be required to litigate in a New York forum.

Under Local Civil Rule 6.1(b), in the absence of a contrary agreement among the parties, the Plaintiff's response was due on or before June 3, 2016.

On June 20, 2016, no response having been filed, the Defendants filed a letter with the Court requesting that the motions be granted as unopposed.

Approximately five months have now elapsed since the filing of the motions to dismiss, and the Plaintiff has yet to respond either to the motions themselves, or to the Defendants' subsequent request that the motions be granted as unopposed.

III.    Discussion

A.    The Relevance of the Motions Being Unopposed

At the outset, the Court addresses the issue raised in the Defendants' most recent filings, namely, that their motions to dismiss the complaint should be granted based solely on the Plaintiff's failure to oppose the relief sought or otherwise participate in this action. Simply stated, the Defendants' position lacks merit.

As this Court has previously held, "[w]here, as here, a plaintiff declines to respond to a Rule 12(b)(2) motion to dismiss and therefore does not address its burden to show personal jurisdiction,

7

the Court nevertheless will review the merits of the defendant's motion to dismiss." *Sea Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 779 F. Supp. 2d 319, 322 (E.D.N.Y. 2011) (Spatt, J.) (citation omitted).

Therefore, notwithstanding the Plaintiff's failure to oppose the instant motions, the Defendants' request to have them summarily granted on that ground is denied.

B.  The Forum Selection Clause

Prior to addressing the merits of these motions, the Court notes that, in addition to federal diversity jurisdiction, the complaint alleges that a forum selection clause in the Financing Agreement provides an alternative basis for the Court's jurisdiction over the Defendants. *See* Compl. ¶ 11. Although the Defendants fail to meaningfully address this contractual provision in their legal memoranda, the Court must first address any legal significance it may have. Usually, "[w]here an agreement contains a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under [an applicable] long-arm statute or federal constitutional requirements of due process." *Am. Med. Distribs., Inc. v. Saturna Grp. Chartered Accountants, LLP*, No. 15-cv-6532, 2016 U.S. Dist. LEXIS 92387, at *9 (E.D.N.Y. July 15, 2016) (Spatt, J.) (citation omitted).

In this regard, the complaint appears to refer to § 4.5 of the Financing Agreement, entitled "Binding Effect, Governing Law, Venue and Jurisdiction," which provides, in relevant part, that:

> Any suit, action or proceeding arising hereunder or under the Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if [the Plaintiff] so elects, be instituted in the Supreme Court of the State of New York, County of Nassau or the United States District Court for the Eastern District of New York (the "Acceptable Forums"). Merchant [STW] and Owner/Guarantor hereby represent and warrant that they have sufficient contacts with the State of New York as a result of the transactions contemplated by this agreement. Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.

*See* Murphy Aff., Ex. 1-A.

While the term "Merchant," as used in the forum selection clause, is defined in the Financing Agreement to refer to STW, the term "Owner/Guarantor" is not defined. Rather, in a space provided for the identity of the "Owner/Guarantor" of STW, the phrase "N/A" is inserted, therefore implying that no individual owner or guarantor of STW was contemplated as coming within the purview of the forum selection clause. This is generally consistent with averments contained in Seabolt's affidavit, namely, that, when reviewing the Financing Agreement and the Security Agreement in advance of Murphy's signature, he endeavored to ensure that the agreement would only be binding and enforceable as against the corporate entity and not the individual Defendants.

It is apparently upon this premise that the Defendants, without a citation to relevant legal authority, argue that, "while Murphy did sign the [Financing] Agreement, which contained choice-of-law and venue provisions, neither of the Defendants are parties to the [Financing] Agreement, [and] they are not bound by any choice-of-law or venue provisions." Murphy Memo of Law, DE [11-1], at 6; *see* Seabolt Memo of Law, DE [12-1], at 7; *see also* Murphy Memo of Law at 2 (arguing that, although the Financing Agreement "contained a provision where by STW consented to jurisdiction in New York," "Murphy did not sign the [Financing] Agreement . . . in his individual capacity").

Notwithstanding the Defendants' efforts to insulate themselves from the binding effects of the Financing Agreement, the Court finds that, based on the forum selection clause, their motions to dismiss on the ground that the New York courts lack personal jurisdiction over them lack merit and must be denied.

In general, "[f]orum selection clauses have long enjoyed a presumption of enforceability." *Philippe NYC I LLC v. Philippe W. Coast, LLC*, No. 14-cv-9858, 2016 U.S. Dist. LEXIS 38513 (S.D.N.Y. Mar. 24, 2016) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 721-22 (2d Cir. 1992)). Thus, in the Court's view, absent any evidence to the contrary, at a minimum, the forum selection clause in this case is

presumptively valid and enforceable as against the signatories to the Financing Agreement, namely, STW and the Plaintiff.

However, the operative question here is whether the reach of the forum selection clause extends to the individual Defendants, who did not, in their own right, sign the Financing Agreement and related transactional documents. The Court answers this question in the affirmative.

As the Second Circuit has explained, the enforceability of a forum selection clause involves a four-part inquiry:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires [the Court] to classify the clause as mandatory or permissive, *i.e.*, to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation marks and citations omitted).

In the Court's view, there is no genuine dispute regarding the first and second of these factors. The forum selection clause was clearly communicated to each of the individual Defendants, as their own affidavits explain the process by which they carefully considered, reviewed, and edited the underlying Financing Agreement so as to minimize their personal exposure. It is also clear that the forum selection clause is mandatory, inasmuch as it requires that any dispute arising from the contract "shall" be commenced in this Court or the Nassau County Supreme Court.

As indicated above, a closer question is presented by the third factor, namely, whether the parties and claims involved in this lawsuit are subject to the forum selection clause.

With respect to the claims themselves, namely, fraudulent inducement and tortious interference, the Court finds that, despite sounding in tort rather than contract, they nevertheless

fall within the scope of the forum selection clause, which, by its plain language, covers "[a]ny suit, action or proceeding arising [under the Financing Agreement ] . . . or the interpretation, performance or breach" of that agreement.

In reaching this conclusion the Court notes that public policy favors broadly interpreting forum selection clauses to include all claims that stem directly from the contractual relationship between the parties. *See Direct Mail Prod. Servs. v. MBNA Corp.*, No. 99-cv-10550, 2000 U.S. Dist. LEXIS 12945, at *16-*17 (S.D.N.Y. Sept. 7, 2000) (noting that "a forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the 'gist' of those claims is a breach of that relationship. Thus, the circuit courts have held that a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract" (internal citations and quotation marks omitted)).

Further, with respect to whether the individual Defendants are subject to the forum selection clause, this Court has recently noted that:

> In this Circuit, a valid forum selection clause may be enforced against a non-signatory who is so closely-related to the actual signatories or the dispute that enforcement of the forum selection clause against it is reasonably foreseeable. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 818 F. Supp. 2d 597, 605-06 (E.D.N.Y. 2011) (quoting *In re Optimal U.S. Litig.*, No. 10-cv-4095, 2011 U.S. Dist. LEXIS 46745, at *40-*41 (S.D.N.Y. May 2, 2011)); *see also LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 160 (E.D.N.Y. 2012) (Spatt, J.) (collecting cases); *Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (observing that "there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard" (quoting *In re Refco Sec. Litig.*, No. 07-mdl-1902, 2009 U.S. Dist. LEXIS 130683, at *40 (S.D.N.Y. Nov. 20, 2009) (Report and Recommendation), *adopted*, 2010 U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010))).
> " 'A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct.' " *Magi XXXI*, 818 F. Supp. 2d. at 606 (quoting *Cuno, Inc. v. Hawyward Indus. Prods.*, No. 03-cv-3076, 2005 U.S. Dist. LEXIS 8886, at *17 (S.D.N.Y. May 10, 2005)).

> In some situations, a "close business relationship" between the signatories and a non-signatory may satisfy this test. *See LaRoss*, 874 F. Supp. at 160. . . . [W]here courts have found such a "close business relationship" to exist, the facts typically indicated that the parties' business operations were essentially "intertwined." *See In re Refco*, 2009 U.S. Dist. LEXIS 130683, at \*40-\*41; *see also Bent v. Zounds Hearing Franchising, LLC*, No. 15-cv-6555, 2016 U.S. Dist. LEXIS 3617, at \*9-\*10 (S.D.N.Y. Jan. 12, 2016) (observing that "[i]n most cases where a non-signatory has been found sufficiently 'closely related' to a signatory to a contract, such that a forum selection clause contained therein could be enforced against him, the non-signatory played an active role in the transaction or was a principal of the signatory company" (internal citations omitted)).

*Am. Med. Distribs., Inc.*, 2016 U.S. Dist. LEXIS 92387, at \*10-\*12.

This case comes squarely within this rule. The individual Defendants are indisputably principals of, and therefore "closely related" to the signatory corporation, so that it was or should have been reasonably foreseeable to them that the otherwise valid forum selection clause in the Financing Agreement might be enforced against them in the event of a breach. *See, e.g.*, *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-cv-8089, 2014 U.S. Dist. LEXIS 37731, at \*19-\*20 (S.D.N.Y. Mar. 18, 2014) (collecting cases for the proposition that "courts have enforced forum-selection clauses against non-signatory officers and directors of signatory corporations"), *aff'd*, 601 F. App'x 43 (2d Cir. 2015).

Indeed, in the Court's view, there can be no dispute that the Defendants foresaw the possibility of being subjected to the forum selection clause in this case, as Seabolt's affidavit concedes that, in his role as corporate counsel, he advised Murphy with respect to taking steps to seal the two men from off potential claims against the company.

Further, the evidence in the motion record suggests that, with respect to the transaction at issue, Murphy and Seabolt were not mere passive employees of STW. On the contrary, it appears that they were both actively engaged in the negotiation and preparation of the operative documents, and admit to participating in relevant communications with representatives of the corporate Plaintiff, although remaining physically present in Texas.

In the Court's view, these facts lead to the conclusion that the Defendants' business interests were and remain "completely derivative of and directly related to, if not predicated upon" those of

their corporate employer, namely, STW. *See Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 25 (E.D.N.Y. 2014) (Spatt, J.) (noting that "[a]lthough 'the phrase 'closely related' is not particularly illuminating,' the foreseeability requirement 'implies that the non-signatory must have been otherwise involved *in the transaction* in some manner" (quoting *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors*, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012))).

Under these circumstances, the Court discerns no rational basis for narrowly construing the scope of the forum selection clause so as to exclude the individual Defendants. Therefore, the Court finds that the third element of the test for enforceability is satisfied and the forum selection clause is presumptively valid.

At the last step of this analysis, the burden now shifts to the Defendants to rebut the presumption of enforceability by making a sufficiently strong showing that requiring them to appear and defend this lawsuit in a New York forum would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. In the Court's view, no such showing has been made.

In this regard, the Court reiterates that the Defendants, seemingly confident that the forum selection clause was not enforceable against them, failed in their legal memoranda to follow the appropriate analytical framework. In particular, rather than directly addressing the enforceability of the forum selection clause, they proceeded immediately to analyze the quality of their personal and business contacts with this state in accordance with New York's long-arm statute.

Nevertheless, although not directly analogous, given the Defendants' *pro se* status; and the Court's concomitant obligation to read their submissions so as to draw from them the strongest possible arguments; the Court has reviewed the Defendants' legal memoranda with a view toward their burden at this stage of the analysis.

In doing so, the Court notes that there are only four generally-accepted methods of rebutting the presumption that a forum selection clause is enforceable, which are narrowly construed, and which are drawn from the Supreme Court's 1972 decision in *Bremen v. Zapata Off-Shore Co.*, *supra*:

> This presumption of validity may be overcome . . . by a clear showing that the [forum selection] clauses are " 'unreasonable' under the circumstances." *The Bremen*, 407 U.S. at 10. The Supreme Court has construed this exception narrowly: forum selection and choice of law clauses are "unreasonable: (1) if their incorporation into the agreement was the result of fraud or overreaching, 111 S. Ct. at 1528; 407 U.S. at 12-13; (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum, 407 U.S. at 18; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, 111 S. Ct. at 1528; or (4) if the clauses contravene a strong public policy of the forum state, 407 U.S. at 15.

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993).

In the Court's view, even construing the Defendants' *pro se* filings liberally, nothing contained in their legal memoranda can reasonably be construed to raise a compelling argument under any of these factors. In fact, to the extent that the Defendants contend – albeit in the context of a due process analysis – that the extent of their business dealings with the Plaintiff fell short of establishing a basis for personal jurisdiction, their argument is belied by the expansive scope of the forum selection clause in the Financing Agreement. In particular, in addition to simply designating a forum, the relevant clause in this case stipulates that STW *has* sufficient contacts with New York as a result of the transaction at issue; STW agrees that a New York forum is convenient to it; and STW willingly submits to the jurisdiction of this Court and waives any and all objections to jurisdiction or venue.

Under these circumstances, the Court finds that the presumption of enforceability has not been rebutted, and that the forum selection clause contained in the Financing Agreement is valid and binding as against the individual Defendants. Therefore, the Defendants' motions to dismiss the complaint based on lack of personal jurisdiction are denied.

Accordingly, the Court need not reach the broader question of whether exercising jurisdiction comports with the applicable long-arm statute and federal constitutional requirements of due process.

IV. CONCLUSION

Based on the foregoing, the Court denies the Defendants' motions to dismiss the complaint based on a lack of personal jurisdiction.

This matter is respectfully referred to United States Magistrate Judge Anne Y. Shields for discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York
October 18, 2016

*/s/ Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge