```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
POWER UP LENDING GROUP, LTD,

                    Plaintiff,

    -against-

ALAN MURPHY and GRANT SEABOLT, JR.,

                    Defendants.
------------------------------------------------------------------------x
```

**FILED
CLERK**

11:08 am, Apr 26, 2017

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

Decision & Order
16-cv-1454(ADS)(AYS)

<u>APPEARANCES:</u>

**Naidich Wurman LLP**
*Attorneys for the Plaintiff*
111 Great Neck Road
Great Neck, NY 11021
    By:   Richard S. Naidich, Esq. Of Counsel

**Bressler Amery & Ross, P.C.**
*Attorneys for the Defendants*
17 State Street, 34th Floor
New York, NY 10004
    By:   Robert Novack, Esq.
           Christina D. Gallo, Esq.
           Michael D. Margulies, Esq., Of Counsel

SPATT, District Judge:

## I. BACKGROUND

On March 24, 2016, the Plaintiff Power Up Lending Group, Ltd. commenced this action against the Defendants Alan Murphy and D. Grant Seabolt, Jr., seeking to recover amounts allegedly due under a financing agreement between the Plaintiff and STW Resources Holding Corp. ("STW"), a corporation controlled by the Defendants. The complaint, which invokes the Court's diversity jurisdiction, alleges causes of action sounding in New York State fraudulent inducement and tortious interference with a contract.

1

On May 20, 2016, the Defendants, acting *pro se*, filed motions under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(2), seeking to dismiss the complaint on the ground that they were not subject to personal jurisdiction in New York.

Although the Plaintiff failed to respond to those motions, in a Memorandum of Decision & Order dated October 18, 2016, the Court denied the relief sought. *See Power Up Lending Grp, Ltd. v. Murphy*, No. 16-cv-1454, 2016 U.S. Dist. LEXIS 144268 (E.D.N.Y. Oct. 18, 2016) (Spatt, J.).

In doing so, the Court held that, notwithstanding the assertedly limited personal contacts that the Defendants, both Texas residents, had with the State of New York, the contract between their corporation and the Plaintiff contained a forum selection clause that provided an alternative basis for the Court's exercise of jurisdiction.

Their motions to dismiss having been denied, on November 1, 2016, the Defendants filed answers to the complaint.

On that same date, the Defendants, still acting *pro se*, also each filed a second motion to partially dismiss the complaint. This time, the Defendants sought dismissal of the Plaintiff's fraud-based claim on the ground that the complaint failed to allege a theory of fraudulent inducement with the level of specificity required under the heightened pleading standard found in FED. R. CIV. P. 9(b).

However, since "Rule 9(b) does not explicitly provide for a dismissal motion"; and since the Defendants have already interposed answers; the Court construes this motion as one for judgment on the pleadings under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

Also, the Court notes that the Plaintiff has again failed to respond to the Defendants' motions.

Nevertheless, as was true of the Defendants' prior motions, "[e]ven when a motion for judgment on the pleadings is unopposed, '[w]here . . . the pleadings are themselves sufficient to

withstand dismissal, a failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint.' " *James v. Comm'r of Soc. Sec.*, No. 13-cv-2492, 2014 U.S. Dist. LEXIS 135594, at *3-*4 (E.D.N.Y. Sept. 24, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).

Rather, "[a]lthough the non-moving party's failure to respond 'may allow the district court to accept the moving party's factual assertions as true, the moving party must still establish that the undisputed facts entitle [her] to a judgment as a matter of law.' " *Lucius v. Colvin*, No. 12-cv-6531, 2014 U.S. Dist. LEXIS 43980, at *21 (W.D.N.Y. Mar. 31, 2014) (quoting *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).

Against this backdrop, the Court turns to the Defendants' current contentions.

## II. DISCUSSION

The Court presumes the parties' familiarity with the underlying factual allegations, which were set forth in detail in the October 18, 2016 Memorandum of Decision & Order. *See Power Up Lending Grp, Ltd.*, 2016 U.S. Dist. LEXIS 144268, at *2-*9. As the Court may not consider any additional evidence in resolving these motions, *see Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 554 (E.D.N.Y. 2014) (Spatt, J.), those facts need not be repeated here.

### A. The Standard of Review

"The same standard that applies to a motion to dismiss under Rule 12(b)(6) applies to a Rule 12(c) motion for judgment on the pleadings." *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-cv-2843, 2010 U.S. Dist. LEXIS 109471, at *10 (E.D.N.Y. Oct. 14, 2010).

Thus, to survive a motion under Rule 12(c), "the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d

868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

B.  As to Whether the Complaint States a Plausible Claim for Fraudulent Inducement

As noted above, the Defendants' principal contention is that the complaint fails to allege a claim based on fraudulent inducement with the level of specificity required under Rule 9(b).

1.  The Applicable Legal Standards

To state a claim for fraudulent inducement under New York law, the Plaintiff must plausibly allege "(1) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the Plaintiff]; and (iv) resulting damages." *Johnson v. Nextel Communs., Inc.*, 660 F.3d 131, 143 (2d Cir. 2011).

However, to satisfy Rule 9(b)'s mandate, these elements must be alleged with specificity. Namely, to comply with the heightened pleading standard, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *see DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (noting that "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations").

"In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and quotation marks omitted).

2.  Application to the Facts of this Case

In this case, as to each material allegation in the complaint, the Defendants contend that the Plaintiff failed to allege any details that might support an inference of fraud, including: (1) the identity of the individual who made the allegedly fraudulent misrepresentation; (2) the date of the

alleged misrepresentation; and (3) the detailed content of the alleged misrepresentation. The Court agrees.

In general, the complaint alleges that the Plaintiff, a merchant cash advance lender, issued a $150,000 loan (the "Loan") to STW. The Loan was secured by a lien on STW's future gross receipts and accounts receivable, which were to be collected in 168 daily installments. However, after making only 14 of the required payments, STW defaulted on the Loan.

The gravamen of the Plaintiff's fraud-based claim is that STW's default was premeditated, and that STW never intended to repay the Loan. It appears that the sole basis for this accusation is the close temporal proximity between the issuance of the Loan and STW's default – a period of approximately 14 days.

Further, and relevant to these motions, the Plaintiff alleges that, in deciding to issue the Loan to STW, it relied on: (1) promises by the individual Defendants that STW would repay the Loan; and (2) documents indicating that STW had the financial capacity to do so.

In this regard, the complaint alleges that the Defendants' promises were insincere; that their documents were materially false; and that both were intended to induce the Plaintiff to issue the Loan under false pretenses.

However, the Defendants persuasively argue that these allegations are unsupported by any non-conclusory facts, as is required under Rule 9(b). For example, the complaint alleges that:

- The Plaintiff issued the Loan "as a result of fraudulent misrepresentations and conduct of the Defendants" (¶ 4);

- The Defendants "made material misrepresentations of fact" to the Plaintiff, "knowing that such misrepresentations were false, and upon which [the Plaintiff] relied and was damaged" (¶ 14);

- Prior to issuing the Loan, the Defendants provided "numerous bank statements, financial records and other documents" to the Plaintiff in order "to induce" the Plaintiff to issue the Loan (¶ 23);

- If the "statements, records and documents" provided by the Defendants had been "true and accurate," the Plaintiff would not have issued the Loan (¶ 24);

- However, the "facts, circumstances and representations contained within these statements, records and documents were false and known to be false by the Defendants at the time that the [D]efendants provided" them (¶¶ 25, 28);

- The close proximity between the issuance of the Loan and STW's default is evidence that the Defendants "were not sincere when they promised to" repay the Loan (¶ 28); and

- The Plaintiff was induced to issue the Loan "based on the promises by STW and the Defendants" that they would repay the Loan (¶ 29).

Initially, the Court notes that the Defendants' alleged conduct in this case, taken as true, represents the fine line that exists between: (1) actionable misrepresentations of present facts; and (2) non-actionable promises reflecting an intent to perform in the future. *See SoFi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 245 (S.D.N.Y. 2006).

In this regard, to the extent that the Plaintiff's claim is premised on the Defendants' failure to keep their promise regarding repayment, there is a colorable argument that such conduct is not actionable in fraud, irrespective of whether the underlying allegations comply with Rule 9(b). *See, e.g., Best Western Int'l v. CSI Int'l Corp.*, No. 94-cv-0360, 1994 U.S. Dist. LEXIS 11815, at *17-*18 (S.D.N.Y. Aug. 23, 1994) (no fraudulent inducement claim was stated where "the representations at issue concern[ed] nothing more than the ability and willingness to perform under the Agreement"; the court held that "the claim [was] nothing more than an attempt to dress up a breach of contract claim as a tort claim by introducing the issue of whether, at the time [the Defendant] entered into the Agreement, there was intent or ability to perform") (quoted favorably in *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)); *cf. Sudul v. Computing Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994) (noting that "the addition only of an allegation that defendant never intended to perform precise promises spelled out in the contract between the parties" does not transform a claim for breach of contract claim into one for fraud).

However, "while mere promissory statements as to what will be done in the future are not actionable, . . . it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of*

*not performing it, it constitutes a misrepresentation of material existing fact* upon which an action for rescission [based on fraudulent inducement] may be predicated." *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (emphasis in original) (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 160, 164 N.Y.S.2d 174, 176, 143 N.E.2d 906, 908 (1957)).

In this case, although the complaint generally charges that the Plaintiff was fraudulently induced to issue the Loan by the Defendants' insincere promises of repayment, it is further alleged that "at the time these promises were made," the Defendants "had a preconceived and undisclosed intention of not performing under the [Loan] Agreement [as evidenced by STW's near-immediate default], which constitutes [a] misrepresentation[ ] of current facts" sufficient to sustain a fraud claim. *See* Compl. ¶ 29. In the Court's view, taken together with the Plaintiff's related accusation that the Defendants also materially misrepresented STW's financial condition in order to procure the Loan under false pretenses, the Court finds that the Plaintiff's chosen theory of liability, if properly pled, is appropriately based on allegedly false statements of "present facts" regarding the Defendants' mindset that induced the Plaintiff's reliance, and is therefore actionable in fraud.

However, notwithstanding the Plaintiff's articulation of a cognizable legal theory, in reviewing the material allegations in the complaint, the Court concurs with the Defendants that they plainly fail to set forth the "who, what, when, where and how of the alleged fraud," and therefore cannot survive Rule 9(b) scrutiny.

The Defendants' argument favoring dismissal relies on this Court's opinion in *Schwartzco Enterprises LLC v. TMH Management, LLC*, 60 F. Supp. 3d 331 (E.D.N.Y. 2014). In that case, as here, the plaintiffs alleged that the defendants fraudulently induced them to invest in a franchise system. Specifically, the plaintiffs claimed that the defendants made material false misrepresentations, using false, inflated and misleading information, including "numerous fraudulent financial spreadsheets

and financial statements about the [franchise]'s current business and profitability (including false earnings claims)." *Id.* at 339-40.

In evaluating the sufficiency of the pleading, the Court concluded that the plaintiffs had failed to satisfy their heightened pleading burden. Namely, after concluding that the plaintiffs had properly alleged the individual defendant's involvement in the alleged fraudulent scheme, the Court noted that

> it does not follow that Rule 9(b) grants an aggrieved party "license to base claims of fraud on speculation and conclusory allegations" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Nor are the Plaintiffs relieved of their obligation, at this stage of the litigation, to adequately allege "how" and/or "why" the statements were fraudulent. *See* FED. R. CIV. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud[.]")
> 
> In this regard, the Court finds that while the Plaintiffs have identified a number of financial figures in emails and spreadsheets which they contend were fraudulent in content, they fail to plead the circumstances constituting the fraud with the specificity required of Rule 9(b). In other words, while the Plaintiffs identify the "who" – albeit in collective terms; the "what;" and the "when" of the fraudulent scheme, they fail to adequately allege "how" and/or "why" the relevant statements or representations were fraudulent, conclusory allegations notwithstanding. For example, the Plaintiffs maintain that the Defendants' representations to them relied on faulty "assumptions;" "misrepresentative sampling" and "cherry picked data" but do little, if anything, to point to specific numbers that were falsified or misleading.
>
> Rather, the Plaintiffs cast an exceedingly wide net. According to the Plaintiffs, it seems each single figure fed to them by the Defendants was fraudulent. However, this "everything but the kitchen sink" pleading, which does little to explain the ways certain figures touted by the Defendants were inflated or distorted, is insufficient under the heightened pleading requirements of Rule 9(b).

*Id.* at 345-46.

Noting the absence of any contrary authority cited by the Plaintiff, the Court finds that the reasoning in *Schwartzco* is applicable to the facts of this case, and warrants a similar result. Namely, even assuming that the Plaintiff's complaint sufficiently alleges the "who" – *i.e.*, the individual Defendants – there are simply no specific facts from which the Court can reasonably infer "when," "what," "why," or "how" the Defendants perpetrated a fraud. *See O'Brien v. Nat'l Prop. Analysts Partners*,

936 F.2d 674, 676 (2d Cir. 1991) (noting that a main purpose of Rule 9(b) is to provide a defendant with fair notice of the plaintiff's claim).

On the contrary, the complaint is painted with an exceedingly broad brush, referring vaguely to "fraudulent misrepresentations;" "[mis]representations of fact;" "promises;" and unspecified "conduct" by the Defendants that allegedly induced the Plaintiff to issue the Loan. Similarly ambiguous are the complaint's references to "bank statements, financial records and other documents" upon which the Plaintiff allegedly relied. The contents of these documents are a mystery, as are the ways in which they allegedly misstated the financial condition of the company.

In sum, the complaint is bereft of any specific facts regarding what financial materials were provided to the Plaintiff and when; who prepared them; what factual information was contained in them; and how, if at all, that information was false or misleading as it related to the Plaintiff's decision to issue the Loan. In the Court's view, the Plaintiff cannot pass Rule 9(b) muster simply by asserting, without any factual detail, that the Defendants tricked them into giving the Loan by lying about their ability to repay it. *Compare Sofi Classic S.A. de C.V.*, 444 F. Supp. 2d at 236-37, 245-46 (outlining specific statements concerning defendant corporation's financial condition which were sufficient to support a fraud claim), *with Leung v. Law*, 387 F. Supp. 2d 105, 115 (E.D.N.Y. 2005) (allegations of bank fraud failed to comply with Rule 9(b) where, although the complaint alleged that the defendants misrepresented their company's financial condition by "'provid[ing] false financial statements,' 'false information' and 'false financial reports,'" the plaintiff failed to "identif[y] the precise statements that he allege[d] were made fraudulently").

Nor does the complaint set forth any specific facts to support the conclusory allegation, cited above, that the Defendants did more than simply breach their promise to repay the Loan – that, instead, they harbored a preconceived and undisclosed intention to do so, thus constituting an actionable misrepresentation of then-present facts. Without any supporting detail, the Court finds

that this is precisely the type of rank speculation and improvident charge of wrongdoing against which Rule 9(b) is meant to act as a safeguard. *See O'Brien*, 936 F.2d at 676.

Accordingly, to the extent that the Defendants seek to dismiss the Plaintiff's claim based on fraudulent inducement for failure to comply with the pleading requirements of Rule 9(b), their motion to dismiss is granted.

### III. CONCLUSION

Based on the foregoing, the Defendants' motion to dismiss the First Cause of Action sounding in New York fraudulent inducement is GRANTED. However, the Plaintiff is granted leave to replead this cause of action in accordance with Rule 9(b) within 30 days from the date of this Order.

Finally, the Court notes that attorney Robert P. Johnson, Esq. has repeatedly filed documents in this matter on behalf of the Plaintiff, despite failing to formally appear as counsel. If Mr. Johnson intends to continue acting on the Plaintiff's behalf, he is directed to file a notice of appearance within five days of the date of this Order.

It is **SO ORDERED:**

Dated: Central Islip, New York
April 26, 2017      */s/ Arthur D. Spatt*
           ARTHUR D. SPATT
           United States District Judge