FILED
CLERK

10:55 am, Oct 03, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

     Plaintiff,

   -against-

ALAN MURPHY and GRANT SEABOLT, JR.,

     Defendants.

-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-01454 (ADS)(AYS)

**APPEARANCES:**

**NAIDICH WURMAN LLP**
*Attorneys for the Plaintiff*
111 Great Neck Road
Great Neck, NY 11021
   By: Richard S. Naidich, Esq., Of Counsel

**BRESSLER AMERY & ROSS, P.C.**
*Attorneys for the Defendants*
17 State Street, 34th Floor
New York, NY 10004
   By: Robert Novack, Esq.,
     Christina D. Gallo, Esq.,
     Michael D. Margulies, Esq., Of Counsel

**SPATT, District Judge**:

   The Plaintiff, Power Up Lending Group, Ltd., ("Power Up" or the "Plaintiff") commenced

this action against the Defendants, Alan Murphy ("Murphy"), and Grant Seabolt, Jr. ("Seabolt")

(collectively the "Defendants") for damages stemming from a financing agreement between the

Plaintiff and STW Resources Holding Corp. ("STW"), a corporation controlled by the Defendants.

The amended complaint, which invokes the Court's diversity jurisdiction, alleges causes of action

sounding in New York State fraudulent inducement and tortious interference with a contract.

1

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the Plaintiff's entire amended complaint. For the following reasons, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

## I. BACKGROUND

### A. The Procedural Background

On March 24, 2016, the Plaintiff commenced this action against the Defendants by filing the original complaint. This complaint also alleged causes of action sounding in New York State fraudulent inducement and tortious interference with a contract.

On May 20, 2016, the Defendants, who were acting *pro se* at the time, filed motions to dismiss the complaint under Rule 12(b)(2) on the ground that they were not subject to personal jurisdiction in New York.

On October 18, 2016, the Court denied the Defendants' May 20, 2016 motion to dismiss, holding that, notwithstanding the assertedly limited personal contacts that the Defendants, both Texas residents, had with the State of New York, the contract between STW and the Plaintiff contained a forum selection clause that provided an alternative basis for the Court's exercise of jurisdiction. *See Power Up Lending Grp, Ltd. v. Murphy*, No. 16-cv-1454, 2016 WL 6088332 (E.D.N.Y. Oct. 18, 2016) (Spatt, J.).

On November 1, 2016, the Defendants filed answers to the original complaint.

On that same date, November 1, 2016, the Defendants, still acting *pro se*, also each filed a second motion to partially dismiss the original complaint. The Defendants sought dismissal of the Plaintiff's fraud-based claim on the ground that the complaint failed to allege a theory of fraudulent

inducement with the level of specificity required under the heightened pleading standard found in Rule 9(b).

On February 22, 2017, the Defendants retained Bressler Amery & Ross, P.C.

On April 26, 2017, the Court granted the Defendants' November 1, 2016, motion to dismiss the New York State fraudulent inducement claim. The Plaintiff was granted leave to replead the claim in accordance with Rule 9(b). *See Power Up Lending Grp, Ltd. v. Murphy*, No. 16-cv-1454, 2017 WL 1497974 (E.D.N.Y. Apr. 26, 2017) (Spatt, J.).

On April 28, 2017, the Defendants deposed the Plaintiff's CEO, Curt Kramer ("Kramer") in this case. A few days later, Magistrate Judge Shields stayed discovery pending the conclusion of motion practice.

On May 15, 2017, the Plaintiff filed an amended complaint, pursuant to the Court's April 26, 2017 Order.

The present motion was filed on June 2, 2016 by the Defendants seeking to dismiss the entire amended complaint, pursuant to Rule 12(b)(6).

## B. The Factual History

Unless otherwise noted, the following salient facts are drawn from the amended complaint and are construed in favor of the Plaintiff.

At all relevant times, Murphy and Seabolt were, respectively, the Chief Executive Officer and General Counsel of STW, a Nevada corporation with a principal place of business in Midland, Texas.

On November 30, 2015, and December 16, 2015, STW issued press releases that discussed the company financials and future business. *Id.* ¶¶ 39-40. The Plaintiff alleges that the press releases "were purposely misleading in a calculated effort on the part of the [D]efendants herein

to create the false impression that [STW]'s economic circumstances and prospects were favorable when in fact neither was the case." *Id*. ¶ 41.

On February 8, 2016, the Plaintiff, a Virginia corporation, entered into a contract with STW. The contract, styled a Revenue Based Factoring Agreement (the "Financing Agreement"), provided that the Plaintiff would provide STW with the sum of $150,000. In exchange, STW would repay the Plaintiff a total of $202,500 over time in 168 daily automatic payments of $1,205.36. Murphy executed the Financing Agreement in his capacity as CEO. The Plaintiff claims that there is a clause in the Financing Agreement that constitutes a written guarantee that the information contained in the Financing Agreement is "complete and accurate." *Id*. ¶ 31. The Plaintiff further alleges that the Financing Agreement contained false information. *Id*.

The Plaintiff alleges that, prior to entering into the Financing Agreement, it reviewed various documents regarding STW's financial condition (the "Financials"). According to the amended complaint, these documents indicated that STW had the financial capacity to fully satisfy its obligations under the Financing Agreement. The Financials were reviewed by the Plaintiff's underwriters as well as Kramer, the Plaintiff's CEO, and were used to recommend entering into the Financing Agreement. *Id*. ¶¶ 32-38, 42.

Prior to authorizing funding for the Financing Agreement, as part of the Plaintiff's due diligence process, Kramer conducted discussions with both of the Defendants. *Id*. ¶ 43. "Seabolt represented to Kramer that the Company's future financial prospects were bright and consistent with the content of the press releases." *Id*. ¶ 44. Further, "Seabolt falsely claimed that no such advance had been taken when in fact merely days before the [Financing Agreement] was [funded], [STW] had taken $125,000 from Arch Capital, another merchant advance company." *Id*. Kramer had a similar conversation with Murphy, the CEO of STW at the time. *Id*. ¶ 45. The Plaintiff

asserts that the Defendants made these false representations "willfully and knowingly" and that without such representations, it would have not entered into the Financing Agreement with STW.

To guarantee repayment of the loan, Murphy, on behalf of STW, allegedly executed a Security Agreement and Guaranty (the "Security Agreement"), and a confession of judgment in favor of the Plaintiff in the amount of $202,500. The Plaintiff claims to have filed notice of its security interest with the Secretary of State for Nevada. Murphy executed the Security Agreement in his capacity as CEO. *Id*. ¶¶ 16-17.

At the same time as the Plaintiff entered into the Financing Agreement, Vis Vires Group, Inc. ("Vis Vires"), a company with the same ownership as the Plaintiff, also entered into an agreement with STW. Vis Vires provided STW with a $50,000 convertible loan. As part of this transaction, STW was required to remain current in its filings with the SEC. The Plaintiff alleges that the Defendants falsely represented that STW would do so. *Id*. ¶ 54.

According to the Plaintiff, after making only 14 of the required installment payments, STW defaulted on its obligations under the Financing Agreement. The current outstanding balance resulting from the Financing Agreement is $182,276.72. *Id*. ¶ 47.

According to the Plaintiff, in April 2016, less than two months after the Financing Agreement, Seabolt disclosed to a third-party creditor that STW was "contemplating a bankruptcy filing." *Id*. ¶ 51.

On August 2, 2016, STW filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. *Id*. ¶ 50.

## II. DISCUSSION

**A.  Standard of Review**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

"In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010)

(quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. Consideration of the Plaintiff's Deposition Testimony

The Defendants contend that the Plaintiff's claims are contradicted by Kramer's testimony, which was conducted prior to the filing of the amended complaint. According to the Defendants, Kramer's testimony is fatal to the Plaintiff's fraudulent inducement claim. Defendants' Memorandum of Law in Support of their Motion to Dismiss Amended Complaint ("Defendants' Brief") at 10. The Plaintiff contends that the testimony may not be considered by the Court at the motion to dismiss stage and that it would be inappropriate to convert this motion to seek summary judgment under Rule 56. Plaintiff's Memorandum of Law at 9-10.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (citation and quotation marks omitted). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010); *Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015). Kramer's deposition does not fall into any of these categories.

When the Court is presented with extraneous materials as part of a Rule 12(b)(6) motion, it has the option to either exclude the evidence when deciding the motion to dismiss or convert the motion into a motion for summary judgment. *See Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (reversing a district court's decision to convert a motion to dismiss into a summary judgment motion for failure to give the plaintiff an opportunity to respond to the defendants' evidence, stating "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material . . . or it may convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material" (quoting *Fonte v. Board of Managers of Continetnal Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988))); *see also Abbey v. 3F Therapeutics Inc.*, No. 06-cv-609, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion to dismiss, and thus complete discretion in determining whether to convert the motion to one for summary judgment." (quoting *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)); *Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *7 (E.D.N.Y. Aug. 18, 2014) (collecting cases).

Rule 12(d) advises that the Court must give both parties "reasonable opportunity to present all material pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(d). "The 'essential inquiry,'

in exercising this discretion, is whether the parties 'should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or [whether they were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) (quoting *In re G&A Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985)).

There are several factors that counsel this Court against conversion. In this case, the Plaintiff has not had the opportunity to take significant discovery from the Defendants, and to the Court's knowledge, the Defendants have only conducted limited discovery. *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 441 n.1 (S.D.N.Y. 2011) ("The Court declines to consider these extraneous materials and will not convert defendants' motion to dismiss into one for summary judgment, since plaintiffs have not had the opportunity to take discovery for defendants." (internal citations omitted)).

Further, the Plaintiff has not been provided the required notice under Rule 12(d). Although the Defendants ask this Court to convert the motion and attach extraneous information outside the complaint, the Court has not held oral argument or hearings of any sort. Moreover, "[w]hile the [D]efendants' submissions . . . gave the [Plaintiff] notice that the [D]efendants wanted the motion changed to one for summary judgment, . . . the [Plaintiff] could not have known whether the court would in fact . . . convert the motion into one for summary judgment." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69 (2d Cir. 2008). In addition, neither party has filed a Rule 56.1 statement, nor has a pre-motion conference been held, pursuant to the Court's individual rules.

The Court, therefore, exercises its discretion to decline to convert the Defendants' motion into a motion for summary judgment and consequently, will not consider Kramer's deposition testimony in resolving the present motion. *See, e.g., Columbia Cas. Co. v. Neighborhood Risk*

*Mgmt. Corp.*, No. 14-cv-0048, 2015 WL 3999192, at *8 (S.D.N.Y. June 29, 2015) (refusing to consider deposition testimony at the motion to dismiss stage); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 944 n.3 (S.D.N.Y. 1989) ("[The plaintiff] also points to discovery documents and deposition testimony to raise an inference of knowledge. The Court declines to consider these proffers as it is well established that on a motion to dismiss, the court must limit itself to a reconsideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." (internal citations omitted)); *S.E.C. v. Simonson*, No. 96-civ.-9695, 2000 WL 781084, at *1 (S.D.N.Y. June 19, 2000) ("I will not convert the Rule 12(b)(6) motion but rather will decide it, excluding from consideration the letter, deposition testimony, and factual allegation."); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 388 (S.D.N.Y. 2013) ("Defendant cannot introduce testimonial evidence from depositions on a motion to dismiss pursuant to Rule 12(b)(6), as the Court is limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.").

## C. Whether the Fraud Claim Meets Rule 9(b)'s Heightened Pleading Standard

The Defendants assert that the fraudulent inducement claim in the Plaintiff's amended complaint fails to meet Rule 9(b)'s mandate. In opposition, the Plaintiff argues that viewed in the light most favorable to the Plaintiff, fraud is properly alleged under the standard. The Court finds that for the reasons stated below, the Plaintiff does sufficiently state a claim for fraudulent inducement that meets Rule 9(b)'s heightened pleading standard.

To establish a prima facie case of fraudulent inducement under New York law, the Plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) an intent to deceive; (3) reasonable reliance on the misrepresentation by [the Plaintiff]; and (4) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011).

To meet Rule 9(b)'s heightened pleading standard, these elements must be alleged with specificity. Namely, the Plaintiff must "(1) detail the statements (or omissions) that the [P]laintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and quotation marks omitted). "Fraud must be pleaded with particularity while malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Houraney v. Burton & Assoc., P.C.*, 701 F. Supp. 2d 258, 260 (E.D.N.Y. 2010) (citing Rule 9(b)).

In this case, as to each material allegation regarding this claim in the amended complaint, the Defendants contend that the Plaintiff failed to allege any details that might support an inference of fraud. In particular, the Defendants claim that the amended complaint merely "contains a recitation of the information contained in certain statements, records, and other documents provided by STW to Plaintiff" but it fails to "identify what specific information contained in those statements, records, and other documents is false." Defendants' Brief at 9. The Court disagrees.

The original complaint, as the Defendants' persuasively previously argued, contained allegations that were not supported by any non-conclusory facts, which led the Court to conclude that the Defendants' conduct may not have constituted fraud. *See Power Up Lending Grp, Ltd. v. Murphy*, No. 16-cv-1454, 2017 WL 1497974 (E.D.N.Y. Apr. 26, 2017) (Spatt, J.). However, the amended complaint contains ample detail to satisfy Rule 9(b)'s "who, what, when, where and

how" requirements. The Defendants' claim that the amended complaint "does little, if anything to further specify the allegations that were deemed insufficient," Defendants' Brief at 8, ignores the additional factual detail provided in the amended complaint.

The amended complaint asserts that the Plaintiff was defrauded both in conversations with the Defendants and in documents that the Defendants prepared and/or signed. The Plaintiff contends that Murphy and Seabolt defrauded the Plaintiff "prior to entering into the [Financing] Agreement," which the parties consummated on February 8, 2016. Amended Complaint ¶¶ 15, 21. During numerous conversations and in multiple documents, the Defendants withheld the true financial situation, and knowingly made false, affirmative statements about STW's finances. For example, the complaint alleges that:

- Seabolt falsely stated that there were no other advances since "the date of the last bank statement submitted," when only a couple of days before, STW received $125,000 from Arch Capital. *Id.* ¶ 44.
- "Seabolt represented to Kramer that [STW]'s future financial prospects were bright and consistent with the content of the press releases." *Id.*
- Seabolt failed to disclose that the company was "encountering significant financial difficulties and potentially contemplating bankruptcy." *Id.*
- Murphy "was encouraging regarding [STW]'s financial condition and future prospects." *Id.* ¶ 45.
- Murphy "failed to disclose any adverse financial circumstances concerning [STW]." *Id.*
- Murphy submitted and signed a written application that contained company financials. He agreed that "the information and documentation provided to [the Plaintiff was] . . . true, accurate and complete[.] [Murphy] will immediately notify [the Plaintiff] of any change in such information or financial condition . . . [The Plaintiff] will rely upon the accuracy and completion of such information and documentation…" *Id.* ¶¶ 29-31
- STW's press releases "were purposely misleading in a calculated effort on the part of the defendants herein to create the false impression that [STW]'s economic circumstances and prospects were favorable when in fact neither was the case." *Id.* ¶ 41.

The Plaintiff further contends that the Defendants knew such information was false. To corroborate that claim, the Plaintiff points to the bankruptcy filing, the failure to file required disclosures to the Securities and Exchange Commission, and evidence that Seabolt had disclosed

to a third party that the company was considering bankruptcy in April 2016. *Id.* ¶¶ 50-53. These details are sufficient to allege that the Defendants did not intend to fully repay the loan. *See Karakus v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 318, 344 (E.D.N.Y. 2013) ("It is true, on the other hand, that a plaintiff may base a fraud claim on a statement of future intention if she can allege facts sufficient to show that the promisor, at the time the representation was made, never intended to honor the promise. (internal citations and quotations omitted)).

Finally, the Plaintiff alleges that it would not have entered the Financing Agreement if it were not for the Defendants fraudulent statements and omissions. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) ("The Second Circuit has been lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences." (internal citations omitted)); *see also Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (Spatt, J.) ("Courts apply a more general standard for scienter for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." (internal quotations and citations omitted)). This is sufficient to set forth the "who, what, when, where and how of the alleged fraud," and therefore survive Rule 9(b) scrutiny.

## D. Whether the Defendants State a Claim for Intentional Interference with a Contract

The Plaintiff's second claim, intentional (or tortious) interference with a contract, alleges that the Defendants "intentionally and with malice aforethought caused STW to breach the [Financing] Agreement…for their own personal benefit." Amended Complaint ¶¶ 60-61. The Defendants contend that the claim fails to state a plausible claim because the Defendants were acting solely in their professional capacity as officers and directors of STW, and therefore cannot be liable for intentional interference with STW's own contract. The Plaintiff disagrees. For the

reasons below, the Court declines to hold that the claim fails as a matter of law and finds that the Plaintiff has adequately stated a claim for intentional interference under New York law.

"To state a claim for tortious interference with contract under New York law, a plaintiff must demonstrate the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Symquest Grp., Inc. v. Cannon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016). A corporate officer, acting in the scope of his or her official duties may not be held individually liable for tortious interference of that officer's corporate employer, *World Wide Commc'ns, Inc. v. Rozar*, No. 96-civ-1056, 1997 WL 795750, at *9 (S.D.N.Y. Dec. 30, 1997); *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 222 (S.D.N.Y. 2002), unless that person "motivated by malice and acting outside of the scope of [his or her] corporate representative capacities induced a breach," *Riddell Sports, Inc. v. Brooks*, 872 F. Supp. 73, 78 (S.D.N.Y. 1995), or that the individual was motivated by "personal gain" rather than "gain for the corporation." *Petkanas v. Kooyman*, 303 A.D.2d 303, 305, 759 N.Y.S.2d 1 (1st Dep't 2003).

The Plaintiff's amended complaint is devoid of any assertions that the Defendants were third parties, acting outside the scope of their corporate duties. In fact, the Plaintiff pleads the exact opposite, that the Defendants were acting in their professional capacity as corporate officers and directors of STW. *See* Amended Complaint ¶¶ 15-16, 25, 27, 29, 41. However, the Plaintiff does in fact plead that the Defendants were motivated by personal gain. *Id.* ¶ 61 ("That the Defendants caused these breaches and defaults to take place for their own personal benefit, as their actions made the funds available to be paid to themselves in compensation and other financial benefits, rather than to be repaid to [the Plaintiff]."). In the Court's view, this is sufficient for the

14

Plaintiffs to state a claim that the Defendants, who were corporate officers of STW, to be held individually liable for tortious interference of STW's contract.

Accordingly, the Plaintiff has adequately pled a claim for intentional interference.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion pursuant to Rule 12(b)(6), to dismiss the Plaintiff's amended complaint is denied in its entirety.

It is **SO ORDERED**:

Dated: Central Islip, New York

October 3, 2017

     */s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge